UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RYAN BROWN,

        Petitioner,                            Case No. 13-cv-11367
                                                Hon. Matthew F. Leitman

v.

KEN ROMANOWSKI,

        Respondent.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS (ECF #1), GRANTING IN PART AND DENYING IN PART CERTIFICATE OF APPEALABILITY, AND GRANTING PERMISSION TO PROCEED IN FORMA PAUPERIS ON APPEAL

Petitioner Ryan Brown ("Petitioner") is a state prisoner in the custody of the Michigan Department of Corrections.  Petitioner has filed a Petition for Writ of Habeas Corpus (the "Petition") challenging his state-court convictions of two counts of delivery of 50-450 grams of cocaine in violation of M.C.L. § 333.7401(2)(a)(iii)) and two counts of delivery of less than 50 grams of cocaine in violation of M.C.L. § 333.7401(2)(a)(iv)).  (*See* ECF #1.)  For the reasons discussed below, the Court **DENIES** the Petition.

## RELEVANT FACTUAL BACKGROUND AND PROCEDURAL HISTORY

At Petitioner's trial, the prosecution presented evidence that Petitioner sold cocaine to Jawad Mirza ("Mirza"), a police informant, on at least four occasions. The evidence – including testimony by Mirza, Detective Sergeant Perry Dare ("Sergeant Dare"), Officer Kenneth Spencer ("Officer Spencer"), and other witnesses – is summarized as follows.

Mirza called Petitioner in September 2005 seeking to purchase one ounce of cocaine as part of a "controlled buy" operation. (*See* Trial Transcript I, ECF #9-4 at 122, Pg. ID 308.)   Prior to the controlled buy, Sergeant Dare thoroughly searched Mirza to ensure that he was not in possession of any drugs. (*See* Trial Transcript II, ECF #9-5 at 271-274, Pg. ID 458-61.)   Sergeant Dare then gave Mirza $800 to buy drugs from Petitioner.   (*See id.* at 271-75, Pg. ID 458-62.) Wearing a hidden audio recording device, Mirza met with Petitioner and gave Petitioner $800; Petitioner gave Mirza 28.7 grams of cocaine. (*See* Tr. I at 124-25, Pg. ID 310-11; Tr. II at 275-77, Pg. ID 462-65.)   Thereafter, Mirza turned over the cocaine to Sergeant Dare. (*See* Tr. I at 124-25, Pg. ID 310-11.)

In November 2005, Mirza called Petitioner to arrange a second controlled buy of two ounces of cocaine. (*See id.* at 127, Pg. ID 313.)   Sergeant Dare again searched Mirza prior to the controlled buy operation. (*See* Tr. II at 283, Pg. ID 479.)   Sergeant Dare then gave Mirza $1,700 to purchase cocaine from Petitioner.

(*See* Tr. I at 128, Pg. ID 314.)  Sergeant Dare also instructed Mirza to bring Officer Spencer – who was then working undercover – with him to meet Petitioner.  (*See id.* at 129, Pg. ID 315.)  Mirza again wore a hidden audio recording device during the controlled buy operation.  (*See* Tr. II at 275-76, Pg. ID 462-63.)  Officer Spencer and Mirza met Petitioner at the designated meeting spot.  (*See* Tr. I at 129, Pg. ID 315.)  Officer Spencer remained in the car while Mirza exited the vehicle to meet with Petitioner.  (*See id.* at 129-32, Pg. ID 315-18.)  Petitioner told Mirza that he only had one ounce of cocaine to sell, and he sold that ounce to Mirza for $850.  (*See id.* at 131-32, Pg. ID 317-18.)  Following the transaction, Mirza gave the one ounce of cocaine and remaining cash to Officer Spencer.  (*See id.* at 132, Pg. ID 318.)

Mirza conducted a third controlled buy from Petitioner in December 2005.  (*See id.* at 134, Pg. ID 320.)  Sergeant Dare again searched Mirza and gave him $1,700 in order to buy two ounces of cocaine.  (*See id.* at 135, Pg. ID 321.)  Mirza again wore a hidden audio recording device.  (*See* Tr. II at 275-76, Pg. ID 462-63.)  Officer Spencer accompanied Mirza to the location of the buy, but Officer Spencer exited the vehicle in order to let Petitioner into the car with Mirza.  (*See* Tr. I at 136, Pg. ID 322.)  While in Mirza's car, Petitioner used Mirza's scale to weigh the cocaine, and Mirza gave him the $1,700.  (*See id.* at 138-39, Pg. ID 324-25.)

Petitioner gave Mirza the two ounces of cocaine.  (*See id.*)  After the sale, Mirza gave the cocaine to Officer Spencer.  (*See id.* at 140, Pg. ID 326.)

On January 10, 2006, Sergeant Dare decided to conduct a "buy-bust."  (*See* Tr. II at 286, Pg. ID 473.)  Mirza called Petitioner and arranged to buy another two ounces of cocaine.  (*See* Tr. I at 142, Pg. ID 328.)  Mirza and Officer Spencer then drove to Petitioner's apartment.  (*See id.* at 143, Pg. ID 329.)  Officer Spencer exited the vehicle in order to let Petitioner into the car with Mirza.  (*See id.* at 146, Pg. ID 332.)  Petitioner handed drugs to Mirza, and Mirza began to weigh the drugs.  (*See id.* at 146-47, Pg. ID 332-33.)  Officer Spencer then gave a signal to waiting officers, and they arrested Petitioner.  (*See* Tr. II at 228, Pg. ID 415.)

Sergeant Dare interviewed Petitioner after the arrest.  (*See* Tr. II at 288, Pg. ID 475.)  Petitioner provided a written statement in which he admitted that he sold cocaine to Mirza on four occasions.  (*See* Tr. II at 296, Pg. ID 483.)  Petitioner also admitted that "a couple" of those sales were for more than 50 grams of cocaine.  (*Id.* at 294, Pg. ID 481.)  Petitioner was then released from custody.

Petitioner was re-arrested on or about September 24, 2007 – roughly twenty months after his original arrest.  (*See* ECF #10 at 16, Pg. ID 842.)  The reason for Petitioner's arrest on or about September 24, 2007, is not clear from the record. However, it appears that on or about September 24, 2007, Petitioner was arraigned on charges that he sold cocaine to Mirza on four occassions.  (*See id.* at 14-15, Pg.

ID 840-41.) Petitioner's trial on those charges began on February 15, 2008. (*See* Tr. I at 1, Pg. ID 187.)

The audio recordings of Mirza's transactions with Petitioner were not available at trial. Sergeant Dare testified that he misplaced the recordings prior to Petitioner's trial when he moved his possessions to a new office. (*See* Tr. II at 276, Pg. ID 463.)

During Petitioner's trial, defense counsel stipulated to the admission of a laboratory report (the "Lab Report") prepared by Rachel Topacio ("Topacio") of the Oakland County Sheriff's Office. (*See* Tr. II at 280, Pg. ID 467.) Petitioner's counsel further stipulated that if Topacio were called as a witness, she would testify that the substance that Mirza turned over to police after the controlled buys was cocaine. (*See id.*) Topacio did not testify at the trial.

During closing arguments, Petitioner's counsel highlighted Petitioner's defense – that Petitioner did not sell cocaine to Mirza, but rather permitted Mirza to use Petitioner's scale to weigh cocaine that Mirza already had in his possession. (*See* Tr. II at 346-47, Pg. ID 533-34; *see also* ECF #9-11 at 44, Pg. ID 760.) This defense theory was undercut, however, by Sergeant Dare's testimony that he searched Mirza prior to each controlled buy to ensure that Mirza was not carrying any drugs. (*See, e.g.*, Tr. II at 271-274, Pg. ID 458-61; *id.* at 283, Pg. ID 479.)

5

The jury convicted Petitioner of the four offenses with which he was charged.  (*See* Tr. II at 372-73, Pg. ID 559-60.)   In his direct appeal to the Michigan Court of Appeals, Petitioner argued that (1) his trial counsel was ineffective for failing to request separate trials on each of the charged offenses, and (2) his written confession was involuntary.  (*See* ECF #9-7 at 9, Pg. ID 580.)

The Michigan Court of Appeals affirmed Petitioner's conviction in an unpublished opinion.  *See People v. Brown*, No. 284568, 2009 WL 1883978 (Mich. Ct. App. June 30, 2009).  Petitioner subsequently filed an application for leave to appeal in the Michigan Supreme Court, raising the same arguments.  (*See* ECF #9-8 at 3-8, Pg. ID 648-53.)   The Michigan Supreme Court denied the application "because [the Court was] not persuaded that the questions presented should be reviewed by th[e] Court."  *See People v. Brown*, 777 N.W.2d 166 (Mich. 2010) (table).

Petitioner then filed a motion for relief from judgment in the state trial court (the "Motion for Relief from Judgment").  Petitioner sought relief on two grounds:

> I. Defendant Ryan Brown was denied his due process right to a fair trial when exculpatory audio recordings that would have proved defendant was not the person who sold drugs to an informant and were lost during a 20-month delay in defendant's arrest and trial counsel was ineffective for failing to move for dismissal on such grounds.

II. Defendant Ryan Brown was denied the effective assistance of counsel guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution and Section Twenty of Article One of the Michigan Constitution when trial counsel failed to investigate and when appellate counsel failed to raise the foregoing issue on direct appeal.

A. trial counsel was ineffective by failing to investigate and uncover evidence in support of defendant's claim at a Walker hearing that his statement was involuntarily made after he was threatened by police that if he did not cooperate his life and children would be taken away from him.

B. Cause and prejudice: appellate counsel was ineffective by failing to raise the foregoing issues on direct appeal satisfying the good cause requirement.

ECF #9-11 at 5, Pg. ID 721.

Petitioner later filed a Motion to Amend his Motion for Relief from Judgment (the "Motion to Amend"). (*See* ECF#9-12.) Therein, Petitioner sought to add the following additional grounds for relief:

III. The state violated the VI & XIV Amendment rights to a speedy trial and due process by conducting the trial more than two years after Brown's arrest which caused actual prejudice according to *Barker v. Wingo*.

A. Trial counsel has ineffective for failing to advise of, or demand/assert defendant's speedy trial rights.

B. Appellate counsel was ineffective for failing to raise these significant claims on direct appeal.

7

IV.   The   state   violated   the   VI   Amendment
Confrontation   Clause   &   XIV   Amendment   Due
Process Clause when it admitted a lab report without
supporting testimony which rendered the entire trial
fundamentally unfair.

A. Trial   counsel   has   ineffective   for   entering   a
conditional stipulation/failing to object to the
error.

B. Appellate counsel was ineffective for failing to
raise   these   Constitutional   claims   on   direct
appeal.

V. The   state   violated   XIV   Amendment   Due   Process
when it permitted Mr. Brown's conviction on less
than proof beyond a reasonable doubt and insufficient
evidence according to *Jackson v. Virginia* & *In re Winship*.

A. Trial counsel has ineffective for failing to move
for a directed verdict upon conclusion of the
evidence.

B. Appellate counsel was ineffective for failing to
raise these significant claims on direct appeal.

*Id.* at 6, Pg. ID 799.

The trial court denied the Motion for Relief from Judgment in an order dated

July 25, 2011.  (*See* ECF #9-13.)  The trial court held that the two claims in the

Motion for Relief from Judgment – i.e., the due process claim based on the twenty-

month arrest delay and the ineffective assistance of counsel claim based upon

counsel's failure to raise the arrest-delay claim and failure to uncover evidence that

Petitioner's confession was involuntary – were procedurally barred from review

8

under Michigan Court Rule 6.508(D)(3) because Petitioner had not shown good cause for failing to raise the claims on direct review.  (*See id.*)  The trial court did not address the claims in Petitioner's Motion to Amend.

Petitioner then filed an application for leave to appeal in the Michigan Court of Appeals (the "Application").  (*See* ECF #9-9 at 8-26, Pg. ID 675-93.)  Petitioner noted that the trial court only considered the two claims raised in his Motion for Relief from Judgment and did not address the three claims in the Motion to Amend.  (*See id.* at 12, Pg. ID 679.)  Petitioner sought leave to appeal only on the three claims in the Motion to Amend that the trial court did not address.  (*See id.*)  The Court of Appeals denied the Application for failure to establish entitlement to relief under M.C.R. 6.508(D).  *See People v. Brown*, No. 307687 (Mich. Ct. App. Sept. 7, 2012).

Petitioner sought leave to appeal the denial of the Application in the Michigan Supreme Court.  (*See* ECF #9-10 at 4, Pg. ID 697.)  The Michigan Supreme Court denied leave under Michigan Court Rule 6.508(D).  *See People v. Brown*, 829 N.W.2d 595 (Mich. 2013) (table).

Petitioner now seeks habeas relief in this Court based on the two claims that he raised on direct appeal and three of the claims that he presented in his Motion for Relief from Judgment and/or in the Motion to Amend.  Specifically, Petitioner seeks habeas relief on the grounds that: (1) his trial counsel was ineffective for

9

failing to move for separate trials for the different charges, (2) his statement to police was involuntary, (3) his right to a speedy trial was violated, (4) the trial court admitted a lab report into evidence at trial without the authoring witness's testimony, and (5) excluding the improperly admitted report, there was insufficient evidence presented at trial to support Petitioner's convictions.

## **GOVERNING LEGAL STANDARD**

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), imposes the following standard of review for habeas claims that were presented to a state court and were adjudicated on their merits:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the

10

Supreme Court has on a set of materially indistinguishable facts.  *See Williams v. Taylor*, 529 U.S. 362, 405–06 (2000).  An "unreasonable application" of clearly established federal law occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."  *Id.* at 410–11.

Indeed, the "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'"  *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997)).  "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664, (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  *Id.* at 102 (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or ... could have supported … the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are

11

inconsistent with the holding in a prior decision" of the Supreme Court.  *Id.*  "[I]f this standard is difficult to meet, that is because it was meant to be." *Id.*

## ANALYSIS

### A. Ineffective Assistance of Trial Counsel Based on the Failure to Move to Sever Charges

Petitioner contends that his trial counsel was ineffective for failing to move for separate trials with respect to the four different drug charges.  (*See* Petition at 6, Pg. ID 7.)  Petitioner argues that if his trial counsel had moved to sever the charges, the trial court would have been required to grant the request.  (*See* Reply Brief, ECF #10 at 4, Pg. ID 830.)  Petitioner further contends that if the charges had been severed, the prosecution would have had insufficient evidence to convict him on any of the charges.  (*See id.*)

In *Strickland v. Washington*, the United States Supreme Court set forth a two-part test to determine whether a criminal defendant petitioner has received the ineffective assistance of counsel.  466 U.S. 668 (1984).  First, a defendant must show that his counsel's performance was deficient.  *See id.* at 687.  "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.*  Second, the defendant must show "that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.*

12

To satisfy the performance prong of *Strickland*, a defendant "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. A court's scrutiny of counsel's performance is highly deferential. *See id.* at 689. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. The burden is on the defendant to overcome the presumption that the challenged action was sound trial strategy. *See id.* at 689.

To satisfy the prejudice part of the *Strickland* test, a defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. To be a reasonable probability, it must be sufficient to undermine confidence in the outcome. *See id.* "This does not require a showing that counsel's actions 'more likely than not altered the outcome,'" but "[t]he likelihood of a different result must be substantial, not just conceivable." *Harrington*, 562 U.S. at 112 (quoting *Strickland*, 466 U.S. at 693).

"The standards created by Strickland and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Id.* at 105 (internal and end citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

13

On direct appeal, Petitioner argued that his counsel was ineffective for failing to move to sever the charges, and the Michigan Court of Appeals rejected the claim on its merits. (*See* ECF #9-7 at 22-27, Pg. ID 593-98). The Court of Appeals acknowledged that if Petitioner's counsel had moved for severance, the trial court "would have been required to grant the motion because the offenses were not related." (*Id.* at 1, Pg. ID 572 (citing M.C.R. 6.120(B)(1), (C)).) Nonetheless, the Court of Appeals held that Petitioner had "not overcome the strong presumption that the failure to request severance was a strategic decision." (*Id.* at 1-2, Pg. ID 572-73.) The Court of Appeals noted that trial counsel "may have reasonably determined that it would have been more difficult to successfully defend four separate prosecutions than one single prosecution, or he might have concluded that his efforts to attack [Mirza's] credibility would be less effective after the initial trial because [Mirza] would be more prepared to respond to counsel's cross-examination." (*Id.* at 2, Pg. ID 573.) The Court of Appeals also determined that Petitioner had not shown that counsel's failure to move for separate trials prejudiced him, as "the prosecution would have been able to present testimony concerning the various drug transactions at the individual trials pursuant to [Michigan Rule of Evidence] 404(b)." (*Id.*) Thus, the Court of Appeals concluded that Petitioner's trial counsel was not ineffective for failing to move for separate trials. (*See id.*)

14

Under the "doubly" deferential standard of review applicable here, *Harrington*, 562 U.S. at 105, the state court's denial of Petitioner's ineffective assistance claim was not unreasonable. Petitioner has not established that his trial counsel's decision to proceed on all four charges in a single trial was unsound strategy. As the Court of Appeals correctly noted, if Petitioner had been tried separately on each charge, the trial court would likely have permitted the prosecution to introduce evidence of all four offenses at each trial.[1] Thus, severing the charges could have given the prosecution multiple opportunities to obtain a conviction by presenting all of the evidence against Petitioner. Under these circumstances, Petitioner has not shown that his trial counsel's performance was deficient. Likewise, Petitioner has failed to show a reasonable probability that the result of his separate trials would have been different if the charges had been severed. Petitioner has thus failed to satisfy both *Strickland* prongs, and he is therefore not entitled to habeas relief on this ground.

---

[1]   Michigan Rule of Evidence 404(b) is a rule of "*inclusion[]* rather than exclusion[]." *People v. VanderVliet,* 508 N.W.2d 114, 121 (Mich. 1993) (emphasis in original). "Evidence is *inadmissible* under this rule *only* if it is relevant *solely* to the defendant's character or criminal propensity." *People v. Mardlin*, 790 N.W.2d 607, 615 (Mich. 2010) (emphasis in original). Evidence of each of Petitioner's transactions with Mirza likely would have been admissible to demonstrate modus operandi and/or to show a common plan, scheme, or system. *See, e.g.*, *People v. Smith*, 625 N.W.2d 46, 54 ("prov[ing] identity through modus operandi, which means a method of operating or doing things," constitutes a permissible purpose pursuant to Rule 404(b)) (internal citations omitted).

15

**B. Voluntariness of Statement to Police**

Petitioner asserts that the trial court erred when it found that Petitioner voluntarily provided his written statement to Sergeant Dare.  (*See* Petition at 7, Pg. ID 8.)  Petitioner contends that he provided the statement involuntarily because Sergeant Dare threatened to have Petitioner's children taken away if Petitioner did not sign the written statement.  (*See* Reply Br. at 5, Pg. ID 831; *see also* Tr. I at 39, Pg. ID 225.)

The Fifth Amendment privilege against compulsory self-incrimination bars the admission of involuntary confessions. *Colorado v. Connelly*, 479 U.S. 157, 163-64 (1986). A confession is considered involuntary if: (1) the police extorted the confession by means of coercive activity; (2) the coercion in question was sufficient to overbear the will of the accused; and (3) the will of the accused was in fact overborne "because of the coercive police activity in question." *McCall v. Dutton*, 863 F.2d 454, 459 (6th Cir.1988).

The voluntariness of a confession is a mixed question of law and fact. *Thompson v. Keohane*, 516 U.S. 99, 108-11 (1995). In determining whether a confession is voluntary, the ultimate question is "whether, under the totality of the circumstances, the challenged confession was obtained in a manner compatible with the requirements of the Constitution." *Miller v. Fenton*, 474 U.S. 104, 112 (1985). "When a defendant claims that a confession was coerced, the government

16

bears the burden of proving by a preponderance of the evidence that the confession was in fact voluntary." *United States v. Mahan*, 190 F.3d 416, 422 (6th Cir. 1999).

Petitioner challenged the voluntariness of his written statement in the trial court.  (*See* Tr. I at 5-47, Pg. ID 191-233.)  Following an evidentiary hearing, the trial court determined that Petitioner's statement was not coerced.  (*See* ECF #9-11 at 75, Pg. ID 791.)  In reaching this conclusion, the trial court credited Sergeant Dare's testimony and declined to credit Petitioner's testimony:

> Detective Dare testified that he read Defendant his *Miranda* rights.  He asked Defendant if he understood each of the rights and Defendant responded that he did. Defendant read the form and initialed each section. Detective Dare testified that Defendant advised that he understood his *Miranda* rights and wished to waive them.
>
> The interview lasted approximately 30 to 40 minutes. Detective Dare testified that Defendant did not appear to be under the influence of alcohol or controlled substances.  He did not appear to be sleep-deprived and appeared to understand his rights.   Detective Dare testified that there were no threats or promises made to Defendant.  Detective Dare denied instructing Defendant what to write in the statement.
>
> Regarding Defendant's claims of threats by the detectives, Detective Dare denied addressing the penalties of the charged crimes, but testified that based on his own encounters with drug offenders, he assumed that Defendant was aware of the penalties.  Detective Dare also denied making any statements regarding Defendant's children.  He did note that he was aware that Defendant had children because there was a safety issue; specifically, when the officers arrested Defendant, the children were unsupervised in the apartment and the

stove was on, but Defendant's father later arrived to tend to the children.   Detective Dare denied making any statements to Defendant regarding his children.

Defendant testified that the detectives made such threats to him and that he executed the waiver form and the statement because he was afraid.   In this regard, the Court notes that Defendant has an extensive narcotics-related criminal record.   It is disingenuous of Defendant to fail to recognize the consequences of his actions in this case.

In reviewing the circumstances, the Court finds that there is no evidence that Defendant showed a lack of intelligence or an educational deficiency.   Defendant is 29 years old.   He completed a portion of the 10th grade and has attempted to obtain his GED; he testified that he does not intend to obtain his GED.   Defendant testified appropriately.

There is no evidence that Defendant appeared to be sleep-deprived or under the influence of any intoxicant. Indeed, despite Defendant's current claim that he was high on marijuana during the interview on January 10, 2006, he was able to testify regarding specific points of the interview. *The Court finds that Defendant was not credible. Further, the Court finds Detective Dare to be a credible witness. As such, the Court cannot find that the detectives coerced, intimidated, or deceived Defendant into waiving his rights.*

Under the totality of the facts of this case, the Court concludes that Defendant understood his rights and that Defendant made a voluntary, knowing and intelligent waiver of the protections afforded by *Miranda*.

(ECF #9-11 at 73-75, Pg. ID 789-91 (emphasis added and internal citations omitted).)

18

Petitioner then challenged the voluntariness of his statement on direct appeal in the Michigan Court of Appeals. (*See* ECF #9-7 at 28-32, Pg. ID 599-603.) The Court of Appeals determined that the trial court did not err in finding that Petitioner's statement was voluntary. (*See id.* at 2-3, Pg. ID 22-23.)

The decision of the state court to credit Sergeant Dare's testimony and not Petitioner's testimony is "presumed to be correct." 28 U.S.C. § 2254(e)(1); *see also Ramonez v. Berghuis*, 490 F.3d 482, 490-91 (6th Cir. 2007) (noting that § 2254(e)(1) standard of review applies to a state court's credibility determinations at a suppression hearing). Petitioner therefore bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Petitioner has failed to satisfy this burden. Petitioner has not any cited specific evidence in support of his claim. (*See* Petition at 7, Pg. ID 8; Reply Br. at 5-6, Pg. ID 831-32.) Instead, Petitioner simply insists that the trial court erred in its credibility determination. That is not enough.

Petitioner has not shown that the trial court's conclusion was contrary to Supreme Court precedent; an unreasonable application of Supreme Court precedent; or an unreasonable determination of the facts. Petitioner is therefore not entitled to habeas relief on this ground.

19

**C. Pre-Arrest and Pre-Trial Delays**

Petitioner makes two distinct constitutional challenges to two different periods of delay in his case.  First, Petitioner argues that his due process rights were violated by the twenty-month delay between the commission of his offenses in late 2005 and early 2006, on one hand, and his second arrest in September 2007, on the other hand (the "Offenses-to-Second-Arrest Delay").[2]  Second, Petitioner contends that his Sixth Amendment speedy trial right was violated by the delay between his first arrest in January 2006 and his trial in February 2008 (the "First-Arrest-to-Trial Delay").  In addition to these direct challenges to the delays, Petitioner contends that he was denied effective assistance of counsel on the grounds that his trial counsel failed to assert his speedy trial rights and that his appellate counsel failed to challenge the delay on direct appeal.  (*See* Petition at 9, Pg. ID 10.)

---

[2]  As noted above, Petitioner was arrested two times: first in January 2006 and again in September 2007.  It is not clear from the record whether Petitioner's September 2007 arrest was primarily related to the drug offenses at issue here or some other, separate charges.  What is clear, however, is that Petitioner was arraigned on the drug offenses on September 24, 2007, on or about the same day as his second arrest.  (*See* ECF #10 at 14-15, Pg. ID 840-41.)  For purposes of Petitioner's due process claim, it is more favorable to Petitioner to use the date of the second arrest (as opposed to the date of the first arrest) as the relevant arrest date.  Even giving that benefit to Petitioner, the due process pre-arrest delay claim fails for the reasons explained below.

### 1. The Due Process Claim Based Upon the Offenses-to-Second-Arrest Delay

The Due Process Clause of the Fourteenth Amendments "provides … constitutional protection from delay" between the commission of an offense and a suspect's arrest or indictment.  *Pharm v. Hatcher*, 984 F.2d 783, 785 (7th Cir. 1993); *see also United States v. Brown*, 498 F.3d 523, 528 (6th Cir. 2007) (citing *United States v. Marion*, 404 U.S. 307, 324 (1971)) ("[D]ue-process rights protect against oppressive delay" prior to arrest or indictment.).  Petitioner argues that the Offenses-to-Second-Arrest Delay violated his due process rights because it resulted in the loss of the allegedly-exculpatory audio recordings.  (*See* Petition at 9, Pg. ID 10.)

Petitioner raised this argument for the first time in his Motion for Relief from Judgment.  (*See* ECF #9-11 at 5, Pg. ID 721.)  The state trial court held that Petitioner failed to show good cause or prejudice for not raising the issue on direct appeal.  (*See* ECF #9-13 at 2, Pg. ID 822.)  The Court therefore determined that Petitioner had procedurally defaulted his claim pursuant to M.C.R. 6.508(D)(3).  (*See id.* at 4, Pg. ID 824.)

Respondent contends that this Court should not consider the Petitioner's due process claim on habeas review because the issue is procedurally defaulted.  (*See* ECF #8 at 44, Pg. ID 132.)  However, where the merits of a habeas claim "present a more straightforward ground for decision," the Court may consider the merits of

the claim first and then address the procedural default question only if necessary. *Arias v. Hudson*, 589 F.3d 315, 316 (6th Cir. 2009) (citing *Lambrix v. Singletary*, 520 U.S. 518, 523 (1997)). That is the case here. Accordingly, the Court will move directly to the merits of Petitioner's claim.

In order to prevail on his claim that the Offenses-to-Second-Arrest Delay violated his due process rights, Petitioner must show that that delay "caused substantial prejudice to [his] rights to a fair trial and … the delay was an intentional device to gain tactical advantage over the accused." *Marion*, 404 U.S. at 324. "[P]roof of prejudice is generally a necessary but not sufficient element of a due process claim, and … the due process inquiry must consider the reasons for the delay as well as the prejudice to the accused." *United States v. Lovasco*, 431 U.S. 783, 790 (1977). "[B]oth conditions (improper reasons for delay and prejudice) are necessary for a due-process violation." *United States v. Brown*, 498 F.3d at 528. Petitioner has failed to demonstrate that either condition was satisfied here.

First, Petitioner has presented no evidence of tactical delay by the government. Indeed, Petitioner has not even alleged – much less offered evidence – that the police had improper tactical motives for the Offense-to-Second-Arrest Delay. The absence of any evidence of tactical delay is fatal to Petitioner's due process pre-arrest delay claim. *See, e.g.*, *id.* at 528.

22

Second, Petitioner has not demonstrated that he was prejudiced by the Offenses-to-Second-Arrest Delay.   Petitioner's theory is that (1) the audio recordings of his interactions with Mirza would have proven that he merely weighed, and did not sell, any drugs and (2) he suffered prejudice when the police lost the recordings during the delay period.   But that theory cannot be squared with the overwhelming evidence that Petitioner was, in fact, guilty of selling drugs to Mirza.   The case against Petitioner was extremely strong:   Petitioner made a written confession; Mirza testified that he purchased cocaine from Petitioner during the controlled buy operations; Officer Spencer was present for several of the transactions; and Petitioner's theory that Mirza possessed the drugs prior to the controlled buy operations was undercut by testimony that either Sergeant Dare or Officer Spencer searched Mirza prior to each transaction and obtained drugs from Mirza immediately after the transactions.

The United States Court of Appeals for the Sixth Circuit and other courts of appeals have concluded that an accused is not prejudiced by a delay where, as here, the evidence of his guilt is exceptionally strong.   That is true even if the delay resulted in the loss of allegedly-exculpatory evidence.   *See, e.g.*, *United States v. Sylvester*, 330 Fed. App'x 545, 549 (6th Cir. 2009) (accused not prejudiced by two-and-a-half-year delay even though relative who would have allegedly provided exculpatory testimony died prior to trial); *United States v. Jones*, 555 Fed. App'x

23

485, 489 (6th Cir. 2014) ("an entire universe of evidence that was available regarding [the petitioner's] guilt undermines his claim that he has suffered substantial prejudice from the lost records"); *Cowart v. Hargett*, 16 F.3d 642, 648 (5th Cir. 1994) (approximately one-year delay that prevented the accused from calling an allegedly-exculpatory witness was not prejudicial "in light of the overwhelming evidence of [the accused's] guilt").[3]

Given the overwhelming evidence of Petitioner's guilt – including Petitioner's voluntary, written confession and Mirza's testimony – the Court is not persuaded that there is a reasonable likelihood that the audio recordings would have supported Petitioner's defense nor changed the result of Petitioner's trial. Petitioner's failure to show prejudice from the pre-arrest delay further dooms his due process claim.

Finally, to the extent that Petitioner raises a freestanding ineffective assistance of counsel claim in his Petition on the ground that his trial and/or appellate counsel failed to raise a due process challenge to the Offenses-to-Second-Arrest Delay, that claim is without merit. Since Petitioner has not shown a reasonable likelihood that the result of the state court proceedings would have been

---

[3]  *See also McCline v. Epps*, No. 05-89, 2008 WL 4457842, at *4 (N.D. Miss. Sept. 30, 2008) (delay not prejudicial to accused "given the overwhelming evidence of [his] guilt – including a written statement and audiotaped confession"); *Browning v. State*, 757 P.2d 351, 352 (Nev. 1988) ("In light of the overwhelming evidence of guilt presented against [the accused] at trial, it is clear that any alleged prejudice would not rise to the level justifying dismissal of the charged crimes.").

different if his counsel had raised the due process issue, his ineffective assistance claim fails. *See Strickland*, 466 U.S. at 694. Accordingly, Petitioner is not entitled to habeas relief on any aspect of his claim.

## 2. The Sixth Amendment Speedy Trial Claim Based Upon the First-Arrest-to-Trial Delay

Petitioner also contends that the First-Arrest-to-Trial Delay violated his Sixth Amendment right to a speedy trial.[4] Petitioner raised this claim for the first time in his Motion to Amend. (*See* ECF #9-12 at 6, Pg. ID 799.) However, the state trial court neither reached the merits of the claim nor enforced a procedural default. (*See* ECF #9-13.) Accordingly, this Court reviews the claim *de novo. See Wiggins v. Smith*, 539 U.S. 510, 533-535 (2003).

The Sixth Amendment provides that "in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. CONST. amend. VI. An individual's Sixth Amendment right to a speedy trial applies only after he or she is arrested or indicted. *See United States v. Brown*, 498 F.3d at 527 (citing *Marion*, 404 U.S. at 321); *see also Edmaiston v. Neil*, 452 F.2d 494, 498 (6th Cir. 1971) (Sixth Amendment speedy trial right is triggered by arrest or indictment,

---

[4]   To repeat, Petitioner was arrested twice. For purposes of Petitioner's Sixth Amendment speedy trial claim, it is most favorable to Petitioner to use the date of his first arrest in January 2006. (In contrast, for purposes of Petitioner's due process pre-arrest delay claim, it was more favorable to Petitioner to use the date of his second arrest.) As explained below, even when Petitioner is given that benefit, his Sixth Amendment claim still fails.

whichever comes first).   To determine whether a speedy trial violation has occurred, a reviewing court must consider the following four factors: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his speedy trial right, and (4) the prejudice to the defendant.   *See Barker v. Wingo*, 407 U.S. 514, 530 (1972).   "[N]one of the four factors identified above [is] either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial."   *Id.* at 533.   "Rather, they are related factors and must be considered together with such other circumstances as may be relevant."   *Id.*   Indeed, even "a finding in the [petitioner's] favor on each of the four *Barker* factors does not necessarily warrant dismissal of the indictment, because a violation of the right to a speedy trial arises only when the circumstances of the case are such that further delay would endanger the values the right protects."   *Brown v. Bobby*, 656 F.3d 325, 337 (6th Cir. 2011).

"The first factor is a threshold requirement: [a court] only consider[s] the remaining *Barker* factors if the delay is longer than one year."   *United States v. Zabawa*, 719 F.3d 555, 563 (6th Cir. 2013).   A delay of more than one year between a defendant's arrest and his trial is "uncommonly long."   *United States v. Bass*, 460 F.3d 830, 836 (6th Cir. 2006).   The delay between Petitioner's first arrest in January 2006 and his trial in 2008 exceeded one year.   This factor therefore favors Petitioner, and the Court proceeds to analyze the remaining *Barker* factors.

26

As to the second factor, the state appears to be at fault for the First-Arrest-to-Trial Delay, but, as discussed above, Petitioner has not established that the delay was tactical. On this record, the Court cannot conclude that the delay was anything but negligent. "Governmental delays motivated by bad faith, harassment, or attempts to seek a tactical advantage weigh heavily against the government, while neutral reasons such as negligence are weighted less heavily…." *United States v. Williams*, 753 F.3d 626, 632 (6th Cir. 2014). This factor therefore weighs in favor of Petitioner, but the Court does not accord it substantial weight.

The third factor – the Petitioner's assertion of his speedy trial rights – does not support Petitioner. Petitioner has not presented any evidence that he asserted his speedy trial rights. The Court acknowledges that Petitioner could not have demanded a speedy trial until he was formally charged in September 2007 because prior to that time he lacked a forum in which to raise his speedy trial rights.[5] Thus, Petitioner had only a limited time – from the charges in September 2007 to trial in February 2008 – to demand a speedy trial. But the fact remains that Petitioner

---

[5] There is some evidence in the record that Petitioner may have been charged with the drug offenses at the time of his first arrest in January 2006. (*See* ECF #10 at 15, Pg. ID 841.) However, Petitioner testified that he was not charged with the drug offenses until he was re-arrested in September 2007. (*See* Tr. I at 36, Pg. ID 222.) If Petitioner had been charged with the drug offenses in January 2006, his failure to assert his speedy trial rights would weigh more heavily against him, as he would have had a longer time period in which to assert those rights. As explained below, even using the September 2007 date that is more favorable to Petitioner, he still has not shown that he asserted his speedy trial rights.

27

never made such a demand. The third factor therefore does not favor Petitioner. However, given the narrow window of time he had to make a demand, this factor does not weigh heavily against him.

The fourth factor – prejudice to the Petitioner – weighs in favor of Respondent. This factor "requires the [petitioner] to show that *substantial* prejudice has resulted from the delay." *United States v. Robinson*, 455 F.3d 602, 608 (6th Cir. 2006) (emphasis added). Prejudice is evaluated with respect to the three purposes of the speedy trial right: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Barker*, 407 U.S. at 532. "Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id.* Petitioner alleges that the First-Arrest-to-Trial Delay impaired his defense because it resulted in the loss of the potentially-exculpatory audio recordings. But, as discussed above, Petitioner has not established that he was substantially prejudiced in light of the overwhelming evidence against him, including his written confession, Mirza's testimony that he purchased cocaine from Petitioner, Officer Spencer's testimony that he was present for several of the transactions, and Sergeant Dare's testimony that he searched Mirza prior to each controlled buy. Given the compelling evidence of Petitioner's guilt, Petitioner has not shown that the First-Arrest-to-

28

Trial Delay resulted in substantial prejudice.  *See, e.g.*, *Sylvester, Jones*, and *Cowart*, *supra*.

Weighing all of the relevant factors, the Court concludes that Petitioner has not sufficiently established a Sixth Amendment violation.  The Sixth Circuit has recognized that the prejudice factor is "[t]he most important factor in our analysis," and a petitioner's failure to establish prejudice "is sufficient to tip the balance in favor of" the government.  *Bobby*, 656 F.3d at 335, 337.  *See also United States v. Love*, 178 F.3d 1297, 1999 WL 115523, at *6-8 (no Sixth Amendment violation when first three *Barker* factors favored defendant, but defendant did not show prejudice from delay). Thus, while some of the *Barker* factors favor Petitioner, Petitioner's failure to demonstrate prejudice compels the conclusion that his Sixth Amendment right to a speedy trial was not violated.[6]

## D. Admission of the Lab Report

Petitioner asserts that his rights under the Confrontation Clause were violated when the trial court admitted the Lab Report without hearing testimony from Topacio.  (*See* Petition at 10, Pg. ID 11.)  Petitioner further contends that he was denied effective assistance of trial counsel on the ground that his attorney

---

[6]   To the extent that Petitioner raises a freestanding ineffective assistance of counsel claim in his Petition on the ground that his trial and/or appellate counsel failed to invoke his Sixth Amendment speedy trial rights, that claim fails because Petitioner has not shown that the result of the proceedings would have been different if his counsel had raised the issue.  *See Wade*, 785 F.3d at 1059.

29

entered into a stipulation to admit the Lab Report.  (*See id.*)  Petitioner also argues

that his appellate counsel was ineffective for failing to raise these issues on direct

appeal.  (*See id.*)

Petitioner raised these issues for the first time in his Motion to Amend.  (*See*

ECF #9-12 at 6, Pg. ID 799.)  The state trial court neither reached the merits of the

claim nor enforced a procedural default.  (*See* ECF #9-13.)  Accordingly, this

Court reviews these claims *de novo*.  *See Wiggins*, 539 U.S. at 533-535.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the

accused shall enjoy the right ... to be confronted with the witnesses against him."

U.S. CONST. amend. VI.   The admission of "testimonial" hearsay statements – that

is, out of court statements that are the functional equivalent of in-court testimony –

violates a defendant's Sixth Amendment rights unless the declarant is unavailable

for trial and the defendant had a prior opportunity to cross-examine the witness.

*See Crawford v. Washington*, 541 U.S. 36, 68 (2004).

The Supreme Court addressed the admissibility of a laboratory report in the

absence of the author's in-court testimony in *Melendez-Diaz v. Massachusetts*, 557

U.S. 305, 308-09 (2009).   In that case, a state prosecutor sought to introduce

forensic laboratory reports showing that a substance seized during the defendant's

arrest was cocaine.   The state court admitted the reports without requiring the

laboratory analysts who performed the tests to testify in person.   The Supreme

30

Court reversed, concluded that the reports were "functionally identical to live, in-court testimony" by the analysts regarding the results of their tests – and the defendant was therefore entitled to confront the analysts at trial.  *Id.* at 310-11.

*Melendez-Diaz* suggests that there was a basis for Petitioner's trial counsel to object to the admission of the Lab Report.[7]  Petitioner's trial counsel, however, waived this objection.  (*See* Tr. at 280, Pg. ID 467 ("If this witness, Ms. Topacio, was to come in and to testify, I would stipulate that her testimony would be that the substance she examined was found to be cocaine."); *see also Melendez-Diaz*, 557 U.S. at 314 n.3 (2009) ("The right to confrontation may, of course, be waived...").) Under these circumstances, having stipulated to the admission of the Lab Report, Petitioner's challenge to the admission of the report must be one for ineffective assistance of counsel.

Petitioner has not shown that he is entitled to relief on the ground of ineffective assistance of counsel.  Even if trial counsel's stipulation to the admission of the Lab Report was deficient representation, Petitioner has not shown that he was prejudiced by the stipulation.  Indeed, Petitioner has not presented any evidence that the substance he sold to Mirza was not, in fact, cocaine.  Nor has

---

[7]  Although *Melendez-Diaz* was decided after Petitioner's trial, the Sixth Circuit has explained *Melendez-Diaz* "did not provide a new or novel interpretation of the Confrontation Clause."  *See Peak v. Webb*, 673 F.3d 465, 480 (6th Cir. 2012). Rather, *Melendez-Diaz* "merely confirms the plain language of the Sixth Amendment and its undisturbed interpretation by the Supreme Court."  *Id.*

presented any reason to believe that cross-examination of Topacio would have undermined in any way the conclusions she stated in the Lab Report.  Thus, Petitioner has failed to show a reasonable likelihood that the outcome of his trial would have had a different if he had been permitted to cross-examine Topacio. Simply put, Petitioner has failed to show prejudice.  Accordingly, Petitioner is not entitled to relief on the ground that his trial or appellate counsel were ineffective with respect to their handling (or non-handling, in the case of appellate counsel) of the Lab Report.

### E.  Sufficiency of the Evidence

Petitioner asserts that if the Lab Report had not been admitted, the remaining evidence would have been insufficient to sustain his convictions.  (*See* Petition at 13, Pg. ID 13; *see also* Reply Br. at 11-12, Pg. ID 837-38.)  This claim has no merit.  "[A] reviewing court must consider all of the evidence admitted by the trial court, *regardless of whether that evidence was admitted erroneously*."  *McDaniel v. Brown*, 558 U.S. 120, 131 (2010) (emphasis added); *see also United States v. Clay*, 667 F.3d 689, 701 (6th Cir. 2012) (same).  "Because [Petitioner's] claim depends on his assertion that the evidence of his guilt was insufficient *without* [the Lab Report], it necessarily fails because consideration of that [document] is required for purposes of a sufficiency-of-the-evidence evaluation."  *Sanborn v. Parker*, 629 F.3d 554, 578-79 (6th Cir. 2010).

32

Moreover, and in any event, Petitioner's sufficiency-of-the-evidence argument mischaracterizes the record. Petitioner asserts that without the Lab Report, the prosecution had no evidence that the substance Petitioner sold to Mirza was cocaine. (*See* Reply Br. at 11-12, Pg. ID 837.) Not true. For example, Officer Spencer and another law enforcement officer testified that they examined the substance Petitioner sold to Mirza and that they believed that the substance was cocaine. (*See* Tr. I at 200-02, Pg. ID 387-89; Tr. II at 254, Pg. ID 441.) More importantly, Petitioner confessed to selling cocaine to Mirza. Thus, even without the Lab Report, the record contains sufficient evidence to support his conviction.

Finally, Petitioner asserts that his trial and appellate counsel were ineffective for failing to raise a sufficiency-of-the-evidence claim at trial and on appeal. (*See* Petition at 13, Pg. ID 13.) However, for the reasons explained above, Petitioner has not shown that this claim has merit, and thus he failed to show that his trial or appellate counsel erred by failing to raise it. Accordingly, Petitioner is not entitled to relief on the ground of ineffective assistance of counsel.

## <u>CERTIFICATE OF APPEALABILITY</u>

In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have

33

been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *See Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a).

As discussed above, the Court believes that Petitioner is not entitled to habeas relief on any of the claims in his Petition. However, reasonable jurists could debate the Court's conclusion that Petitioner is not entitled to relief based on his claims that (1) the Offenses-to-Second-Arrest Delay violated his due process rights, and (2) the First-Arrest-to-Trial-Delay violated his Sixth Amendment speedy trial rights. Therefore, the Court will grant Petitioner a certificate of appealability *solely* as to these two issues.

## CONCLUSION

For the reasons discussed in this Opinion and Order, **IT IS HEREBY ORDERED** that the Petition for Writ of Habeas Corpus (ECF #1) is **DENIED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a certificate of appealability and permission to proceed *in forma pauperis* on appeal is **GRANTED** solely as to Petitioner's claim that the Offenses-to-Second-Arrest Delay violated his due

34

process rights and his claim that the First-Arrest-to-Trial Delay violated his Sixth

Amendment rights.  A certificate of appealability is **DENIED** as to all other issues.

     **IT IS SO ORDERED**.

                              s/Matthew F. Leitman
                              MATTHEW F. LEITMAN
                              UNITED STATES DISTRICT JUDGE

Dated:  July 1, 2015

I hereby certify that a copy of the foregoing document was served upon the parties
and/or counsel of record on July 1, 2015, by electronic means and/or ordinary mail.

                              s/Holly A. Monda
                              Case Manager
                              (313) 234-5113